566 F.2d 1373
 Edith RAWLS, Individually and as Administratrix of the
Estate of M. D. Rawls, Deceased, and Emma Mae Cox,
a widow, Appellants,
v.
UNITED STATES of America, Rogers G. Morton, Secretary of the
Department of the Interior of the United States of America,
Earl L. Butz, Secretary of the Department of Agriculture of
the United States of America, and the Atchison, Topeka and
Santa Fe Railway Company, a Kansas Corporation, Appellees.
 Nos. 76-1604 and 76-1123.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 6, 1978.
 
 Phillip E. von Ammon (argued), Fennemore, Craig, and von Ammon & Udall, Phoenix, Ariz., for appellant.
 Appeal from the United States District Court for the District of Arizona.
 Before WRIGHT and WALLACE, Circuit Judges, and GRANT, District Judge.*
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This appeal presents issues relating to the validity of seven contiguous mineral claims in the Kaibab National Forest in Arizona. Appellants Rawls and Cox are successors in interest to those who established the claims being challenged by the appellees. Appellants seek reversal of the district court's order affirming a decision of the Secretary of the Interior which held invalid six of their seven claims because there had not been a discovery of valuable minerals before July 23, 1955.[1]
 
 
 2
 Cross-appellant Atchison, Topeka & Santa Fe Railway Co. (Santa Fe) urges that the Secretary and the district court erred in concluding that the lands on which the claims lie are open to mineral entry.[2]
 
 
 3
 We affirm the judgment of the district court.
 
 THE RAWLS/COX APPEAL:
 Rawls and Cox contend:
 
 4
 (a) that the Cococino sandstone on their unpatented placer mining claims is a mineral of extraordinary value and therefore their claims are not subject to the timely discovery requirements necessitated by 30 U.S.C. § 611;[3]
 
 
 5
 (b) that there had nevertheless been a timely discovery, and
 
 
 6
 (c) alternatively, that the validity of the claims should be measured by circumstances on the date of the administrative hearing rather than as of July 23, 1955.
 
 
 7
 The Secretary ruled that Cococino sandstone is a common variety of stone. As a result, 30 U.S.C. § 611 does apply and precludes mineral entry unless there was a valid discovery before July 23, 1955. Appellants assert that this sandstone is a building stone and that a valid claim can therefore be established after 1955 under the provisions of 30 U.S.C. § 161. However, for a post-1955 discovery of building stone to be valid, the stone must be of "uncommon variety." United States v. Coleman, 390 U.S. 599, 604, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968).
 
 
 8
 The hearing examiner, the Bureau of Land Management and the Secretary, through the Interior Board of Land Appeals, concluded that appellants' Cococino sandstone did not have such unique, valuable properties as to be other than common stone.
 
 
 9
 Classification as a common variety under the statute is a matter of statutory construction calling for deference to the expertise of the agency charged with the statute's administration. See Brubaker v. Morton, 500 F.2d 200 (9th Cir. 1974), and cases cited therein. In this case the Secretary's determination was based on the stone's physical characteristics, use and value, and accords with standards set forth in United States v. Coleman, supra. The district court properly affirmed that conclusion.
 
 
 10
 The Secretary determined there was not a timely discovery on six of appellants' claims. The standards for ascertaining whether there had been are not in dispute. A discovery of valuable mineral deposits must be such that an ordinary prudent person would be justified in "further expenditure of his labor and means with a reasonable prospect of success, in developing a valuable mine . . . ." United States v. Coleman, supra 390 U.S. at 602, 88 S.Ct. at 1330, quoting Castle v. Womble, 19 L.D. 455, 457 (1894).
 
 
 11
 The reasonable man test for discovery is logically complemented by a marketability test. Id. 390 U.S. at 602, 88 S.Ct. 1327. The marketability test requires "at the time of discovery, a market . . . sufficiently profitable to attract the efforts of a person of ordinary prudence." Barrows v. Hickel, 447 F.2d 80, 83 (9th Cir. 1971).
 
 
 12
 Absence of sales in the critical period, though relevant, will not alone support a finding of unmarketability and nondiscovery. When there is little or no evidence of pre-1955 sales, a court should consider costs of extraction, preparation and transport as well as the level of then-existent market demand. Verrue v. United States, 457 F.2d 1202 (9th Cir. 1972).
 
 
 13
 Viewing the evidence through this analytical framework, we conclude that the Secretary's conclusion is supported by substantial evidence. The district court correctly affirmed it. Palmer v. Dredge Corp., 398 F.2d 791 (9th Cir. 1968), cert. denied sub nom Dredge Corp. v. Penny, 393 U.S. 1066, 89 S.Ct. 715, 21 L.Ed.2d 709 (1969).
 
 
 14
 Although the evidence at the administrative hearing was contradictory and the case hotly disputed, it is this court's role only to review the record for substantial evidence in support of the Secretary's decision. We do not reweigh the evidence.[4]
 
 
 15
 Finally, the circumstances relating to whether or not there has been a discovery of valuable minerals are to be evaluated as of the period preceding July 23, 1955, rather than as of the date of the administrative hearing. Because a claimant must have made a valuable discovery prior to the critical date, events thereafter are not pertinent to the inquiry.
 
 SANTA FE'S CROSS-APPEAL:
 
 16
 Santa Fe urges that several claims are invalid because located on land acquired by the federal government from a private owner under the General Exchange Act of 1922, 16 U.S.C. § 485. Because we have affirmed the findings of invalidity made by the Secretary, the issue is moot as to all claims except Blue Jay, the sole valid claim.
 
 
 17
 The General Exchange Act of 1922 authorizes the Secretary of Interior to obtain title to privately-owned land located within national forest boundaries when the Secretary of Agriculture has determined such land is "chiefly valuable for national-forest purposes . . . ."
 
 
 18
 Sante Fe relies on Rawson v. United States, 225 F.2d 855 (9th Cir. 1955), cert. denied, 350 U.S. 934, 76 S.Ct. 306, 100 L.Ed. 816 (1956), and Thompson v. United States, 308 F.2d 628 (9th Cir. 1962), to support its contention that land so acquired is not open to entry. In Rawson we held that lands acquired under a specific statutory authorization for particular purposes (to retire submarginal lands from agriculture, to prevent soil erosion, to protect watersheds, and to conserve wildlife) were not subject to the general land or mining laws and therefore not subject to mineral entry.
 
 
 19
 Thompson concerned mining claims on lands donated to the United States for forestry and timber production. The land was deemed not open to entry. Neither Thompson nor Rawson construed the 1922 Exchange Act. The Thompson court explained the difference between lands held by the United States subject to the general land laws (and therefore subject to mineral entry) and lands acquired for particular purposes incompatible with mineral entry. The Exchange Act of 1922 contains no indication that lands are to be acquired for a specific purpose that would be frustrated by their being subject to mineral claims. Cf. United States v. Wood, 466 F.2d 1385, 1387 n. 1 (9th Cir. 1972) (distinguishing Thompson and Rawson ).
 
 
 20
 Furthermore, the Department of the Interior and the United States Attorney General have declared authoritatively that lands acquired under the 1922 Exchange Act are public lands open to mineral entry. See Department of the Interior Solicitor's Opinion M-36421 (Feb. 18, 1957); 40 Att'y Gen.Op. 260 (1943).
 
 
 21
 Accordingly, the judgment of the district court is, in all respects, AFFIRMED.
 
 
 
 *
 Senior District Judge, of the Northern District of Indiana
 
 
 [1]
 The United States and Santa Fe jointly challenged the following claims for lack of timely discovery: White Rock # 1, White Rock # 2, Lucky 7, and Cucamunga X. The United States alone challenged the Mystery claim on the same grounds, while Santa Fe mounted like attacks on the validity of the Blue Jay and Cuervo claims. The challenges were consolidated at the administrative hearing
 The hearing examiner ruled all claims but White Rock # 1, Blue Jay, and Cuervo invalid because valuable minerals had not been timely discovered. On administrative appeal, White Rock # 1 and Cuervo were invalidated for the same reason.
 
 
 [2]
 Santa Fe argued that all or part of Lucky 7, Cucamunga X, Blue Jay and Cuervo was located on land not open to mineral entry. The argument did not prevail, but eventually only Blue Jay was held valid because other claims did not meet the timely discovery requirement
 
 
 [3]
 30 U.S.C. § 611, which became effective on July 23, 1955, removed common minerals from mining location under federal law. Therefore, valid mining claims for common minerals must be based on a "discovery" before July 23, 1955. See United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968)
 
 
 [4]
 Appellants focus heavily on the expert testimony offered against them. However, although the conclusions of one witness as to the legal standard for discovery were incorrect after our decision in Barrows v. Morton, supra, the record as a whole (including June, 1955, aerial photographs, tax returns of one of the original claimants, and reports of a mineral surveyor) supports the Secretary's decision. His decision was premised on the standards enunciated by this court in Barrows and does not reflect incorrect market analysis requiring remand. Cf. Melluzzo v. Morton, 534 F.2d 860 (9th Cir. 1976)
 Our recent case of Charlestone Stone Products Co., Inc. v. Andrus, 553 F.2d 1209 (9th Cir. 1977), although factually distinguishable from the case at bar, explains the standard of review employed in such cases as this. Id. at 1213.